585 So.2d 1009 (1991)
Dale Joseph DYER, Appellant,
v.
DEPARTMENT OF INSURANCE AND TREASURER, a State Agency, Appellee.
No. 90-1465.
District Court of Appeal of Florida, First District.
August 21, 1991.
Rehearing Denied September 25, 1991.
*1010 J. Riley Davis of Taylor, Brion, Buker & Greene, Tallahassee, for appellant.
S. Marc Herskovitz, Div. of Legal Services, Dept. of Ins., Tallahassee, for appellee.
ZEHMER, Judge.
This is an appeal from a final order of the Department of Insurance that suspended Dale Joseph Dyer's license as a health insurance agent in Florida for a period of six months and imposed an administrative fine in the amount of $5,000. Dyer raises four points, arguing that: (1) the evidence is legally insufficient to support the findings *1011 of his guilt for violating several sections of the Florida Insurance Code; (2) the Department illegally imposed an administrative fine with the suspension of his license; (3) if a fine could be imposed, the fine in this case exceeds the amount allowed by the applicable statute; and (4) the Department increased the penalty beyond that recommended by the hearing officer without specifying the precise reasons for doing so and, thus, violated section 120.57(1)(b)10, Florida Statutes (1989). We affirm the findings of guilt, affirm the six-month suspension, but reverse the administrative fine as contrary to law, and remand to the Department for entry of an amended final order.

I.
The charges in the Department's administrative complaint arose out of two separate transactions involving the sale of health insurance policies, one to Mr. and Mrs. Laws, and three to Ms. Hendryx. In general, it was charged that the policies sold by Dyer duplicated coverage already owned by the insureds, that Dyer made certain willful misrepresentations to the insureds and fraudulently induced them to purchase the policies, and that Dyer was not fit and competent to engage in the insurance business. A formal evidentiary hearing was held, and the hearing officer entered a recommended order containing extensive findings of fact and conclusions of law. The order summarized the precise charges against Dyer as follows:
As to both counts I and II, Petitioner [Department of Insurance] specifically alleges that Respondent is guilty of: misrepresentation, (626.611(5) and 626.9541(1)(a); a demonstrated lack of fitness and trustworthiness to engage in the insurance business, (626.611(7); a demonstrated lack of general knowledge, (626.611(8); fraudulent or dishonest practices, (626.611(9); willful failure to comply with a rule or order of the department, (626.611(13) and 626.621(3); violation of the provision of the insurance code or other law, (626.621(2); violation of the rule against "twisting", 626.621(5); engaging in unfair or deceptive methodology of competition or being a source of loss or injury to the public, (626.621(6) and 626.9521: knowingly making an untrue, deceptive or misleading advertisement, (626.9541(1)(b) and (1)(e)1; and improperly comparing his policies with those of another company, (Rule 4-4.003(2) F.A.C.).
The recommended order concluded that Dyer was guilty of certain charges but innocent of others:
With regard to the allegations relating to both parties, the evidence clearly indicates that the policies sold to both the Laws and Ms. Hendrix by the Respondent, assisted by Mr. Chappuis, were, in many particulars, largely duplicative of their existing coverage. This constitutes a clear violation of Rule 4-46.003(2), F.A.C., and as such, is a violation of Section 626.621(3). When considered along with Respondent's representation or acquiesence in Mr. Chappuis' representation of dental, vision and hearing coverage when he knew Mrs. Laws already wore a hearing aid, it also constituted willful misrepresentation or deception in violation of Section 626.611(5) and an unfair or deceptive practice under Sections 626.9541(1)(b) and (1)(e)1.
It also casts doubt on his fitness and trustworthiness to engage in the business of insurance under Section 626.611(7). However, because both clients gave no indication of coercion or other pressure being applied in their relationship, because Mr. Chappuis indicated he had no knowledge or [sic] any prior or ongoing misconduct and placed much faith in Respondent's abilities, and because there is no evidence or [sic] prior disciplinary action against the Respondent, the doubt here is resolved in his favor. By the same token, the evidence of Respondent's lack of knowledge or competence, or the more egregious offenses of fraud or dishonest practice, outlined in subsections (8) and (9) of this section, have not been proven as well.
On the other hand, Respondent's conduct has been shown to be a clear violation of the proscription against "twisting", *1012 and, at least minimally, constitutes the use of unfair or deceptive methods of competition. However, the evidence does not show that, except for the resultant payment of unnecessary premiums for coverage duplicative of other coverage already in effect, Respondent's activities resulted in any loss or injury to his clients or the public. They got the coverage they paid for (and could be paid under both policies), albeit that coverage might not have been needed or appropriate under industry standards.
What is also clear is that Respondent unfairly and deceptively compared his company's policy with that of his competition, resulting in some replacement, which is also a violation of the aforementioned departmental rule.
Having concluded that Respondent's actions constituted at least some violations of the pertinent statutes and rule, the question next for resolution is the determination of an appropriate disciplinary action. At least some of Respondent's violations fall under the purview of Section 626.611, which calls for compulsory suspension or revocation. Others fall under the purview of Section 626.621, for which the imposition of suspension or revocation is within the discretion of the department.
For the reasons already cited, that is: the lack of aggravating circumstances surrounding the commission of the offenses, the fact that neither client suffered any appreciable loss due to Respondent's misconduct, and the lack of any evidence of prior misconduct, it is concluded that an actual suspension or revocation should not be implemented. However, it is imperative that sufficient action be taken to impress upon the Respondent the requirement to deal with his clients in an absolutely forthright and open manner so as to provide to them an opportunity to make a well informed decision regarding their bona fide insurance needs.
Based on these conclusions, the hearing officer recommended "that Respondent's license as a health insurance agent in Florida be suspended for a period of six months and that he pay an administrative fine of $5,000.00, but that in lieu of implementation of the suspension, Respondent be placed on probation for a period of two years under such terms and conditions as may be specified by the Department of Insurance.
Upon consideration of the recommended order, the Department of Insurance adopted the hearing officer's findings of fact and conclusions of law "in full," but modified the recommended penalty in two significant respects. The Department disapproved the hearing officer's recommendation not to implement the recommended six-month suspension and ordered the immediate suspension of Dyer's license for a period of six months. The final order also directed Dyer to pay an administrative fine in the amount of $5,000 within 30 days of the date of the order, and further provided that failure to pay the fine within the time prescribed would "result in the immediate revocation of the Respondent's license in this state without further proceedings." (Emphasis added.)

II.
Dyer argues that the record lacks competent, substantial evidence to support factual findings that he violated any provisions of the cited statutes. He emphasizes that the only charge of willful misconduct under section 626.611 found by the hearing officer related to subparagraph (5) of that section. He correctly points out that an essential element of this willful violation was the fact that he knew Mrs. Laws had a hearing aid at the time the Lawses purchased the insurance policy and that he knew the policy covered only an "initial" purchase of a hearing aid. Yet, Dyer argues, the record contains no competent, substantial evidence establishing his personal knowledge of this fact because it is undisputed that Mrs. Laws was not wearing the hearing aid at any time when he was present, she did not testify that she ever told him about the hearing aid, and he denied in his testimony that she ever mentioned to him that she had ever used a hearing aid. Dyer contends that the hearing *1013 officer simply assumed he knew about the hearing aid without having received any substantial evidence of this fact.
Our review of the record, however, reveals that Mr. Laws testified that both Dyer and Chappuis were told that Mrs. Laws had obtained and worn a hearing aid in the past, but that she had not worn it for at least two years because it was so uncomfortable. Mr. Laws also testified that they discussed with Dyer and Chappuis how to obtain a replacement hearing aid under the policy, and were told that if Mrs. Laws needed a hearing aid for both ears, she would have to wait a year after obtaining the first one before obtaining the second one. Mrs. Laws's testimony was unclear as to whether Dyer was present when these matters were discussed. As the policy covered the purchase of an "initial" hearing aid, when Mrs. Laws submitted a claim for a new one, the insurer turned her down because she already had one prior to purchasing this policy, and thus her claim was not for an "initial" hearing aid.
We recognize that the evidence of Dyer's knowledge of Mrs. Laws's prior use of a hearing aid is inconsistent, ambiguous, and may well be lacking in the "clear and convincing" quality required by the burden of proof standard placed on the Department. See Ferris v. Turlington, 510 So.2d 292 (Fla. 1987). Nevertheless, Mr. Laws's testimony is competent, substantial evidence that Dyer was told about Mrs. Laws's hearing aid, even though her testimony was conflicting. It is not the function of this court when reviewing an agency order by appeal to substitute our judgment for that of the agency as to the weight of the evidence on any disputed issue of fact, nor is it our function to determine whether the evidence as a whole satisfies the clear and convincing standard of proof; these functions lie with the trier of fact. Our scope of review is to determine whether the record contains competent, substantial evidence to support the findings made by the trier of fact. § 120.68(10), Fla. Stat. (1989). We conclude that the record contains competent, substantial evidence to support the findings of fact on the issue of Dyer's willful misconduct discussed above and the other material findings of fact as well.

III.
We now consider Dyer's three points challenging the legality of the penalty imposed by the Department. This task requires a detailed analysis and construction of the several statutory provisions involved. In so doing, we recognize once again that an agency of the state is "afforded wide discretion in the interpretation of a statute which it administers and such interpretation will not be overturned unless clearly erroneous." E.g., National Federation of Retired Persons v. Department of Insurance, 553 So.2d 1289, 1290 (Fla. 1st DCA 1989). However, our review of the agency's interpretation must also be governed by the principle of statutory construction that penal statutes shall be strictly construed in favor of the person against whom the penalty could be imposed. Yes Dear, Inc. v. Department of Revenue, 523 So.2d 1235 (Fla. 1st DCA 1988); Holmberg v. Department of Natural Resources, 503 So.2d 944 (Fla. 1st DCA 1987). As Dyer was found guilty of violating sections 626.611, 626.621, and 626.9541(1), Florida Statutes (1987),[1] these sections are necessarily the focus of this analysis.

A.
Chapter 626, as part of the Florida Insurance Code,[2] is entitled "Insurance Field Representatives and Operations." Sections 626.611 and 626.621 are found in Part I of chapter 626, which is entitled "Insurance Representatives; Licensing Procedures and General Requirements." This part specifically "applies as to insurance agents, solicitors, service representatives, adjusters, and insurance agencies." *1014 § 626.022(1), Fla. Stat. A "health agent" is defined in section 626.062 as "one representing, as to health insurance, only, an insurer transacting health insurance," and is required to obtain an agent's license pursuant to section 626.112(1).
Section 626.611 sets forth grounds of misconduct requiring compulsory suspension or revocation of an insurance agent's license.[3] Section 626.621 sets forth grounds of misconduct for which the Department has discretion to suspend or revoke an agent's license.[4] It is important to note that section 626.621 is applicable only if the violation thereof exists "under circumstances for which such denial, suspension, revocation, or refusal is not mandatory under s. 626.611." In other words, section 626.621 cannot be applied whenever the insurance agent has also violated a provision in section 626.611. Moreover, the repetitive use of the phrase "any one or more of the following applicable grounds" indicates that only one penalty is contemplated under the statutory scheme, whether or not the agent is found guilty of multiple violations of either or both sections. The severity of the penalty to be imposed must be determined under the statute prescribing the grounds and penalty for the most serious offense. Thus, when one has violated section 626.611 and 626.621, section 626.611 governs the penalty to be imposed.
Section 626.681 authorizes the Department to impose an administrative fine in lieu of discretionary suspension or revocation for violation of section 626.621:
(1) Except as to insurance agencies, if the department finds that one or more grounds exist for the suspension, revocation, or refusal to renew or continue any license or permit issued under this chapter, the department may, in its discretion, in lieu of such suspension, revocation, or refusal, and except on a second offense or when such suspension, revocation or refusal is mandatory, impose upon the licensee or permittee an administrative penalty in the amount of $500 or, if the department has found willful misconduct or willful violation on the part of the licensee or permittee, $2,500. The administrative penalty may, in the discretion of the department, be augmented by an amount equal to any commissions received by or accruing to the credit of the licensee or permittee in connection with any transaction as to which the grounds for suspension, revocation, or refusal related.
* * * * * *
(3) The department may allow the licensee or permittee a reasonable period, not to exceed 30 days, within which to pay to the department the amount of the penalty so imposed. If the licensee or *1015 permittee fails to pay the penalty in its entirety to the department at its office at Tallahassee within the period so allowed, the licenses or permits of the licensee or permittee shall stand suspended or revoked or renewal or continuation shall be refused, as the case may be, upon expiration of such period.

(Emphasis added.) Section 626.691 authorizes the Department to grant probation in lieu of suspension or revocation under certain circumstances:
(1) If the department finds that one or more grounds exist for the suspension, revocation, or refusal to renew or continue any license or permit issued under this part, the department may, in its discretion, except when an administrative fine is not permissible under s. 626.681 or when such suspension, revocation, or refusal is mandatory, in lieu of such suspension, revocation, or refusal, or in connection with any administrative monetary penalty imposed under s. 626.681, place the offending licensee or permittee on probation for a period, not to exceed 2 years, as specified by the department in its order.
(Emphasis added.)
Again, the repetitive use of the phrase "one or more grounds" in these two sections indicates that only a single penalty of suspension or revocation, or the authorized alternative fine and probation in lieu thereof, can be imposed even though multiple violations are found. The statutory scheme is abundantly clear that when a licensed insurance agent has violated section 626.611, such violation requires mandatory suspension or revocation, precluding the application of section 626.621 and use of the alternative sanctions as provided in sections 626.681 and 626.691. In this circumstance, the Department is obligated to impose either suspension or revocation pursuant to section 626.611, with the severity of the penalty to be based upon the number and severity of all offenses of which the licensee has been found guilty at that time.
In the instant case, Dyer has been found guilty of at least one ground of misconduct under section 626.611(5), so his suspension was mandatory as a matter of law. Therefore, the recommended order erred as a matter of law in recommending that the six-month suspension not be implemented and a fine and probation be imposed instead. In view of this mandatory suspension, the Department was not authorized to impose an administrative fine in any amount under the provisions of section 626.681.

B.
The Department, however, makes a unique argument in an effort to avoid the obvious restrictions on the exercise of its discretion found in these sections of the insurance code. The Department argues that the fines imposed against Dyer were not premised on violations of sections 626.611 and 626.621, but rather were premised on Dyer's violations of section 626.9541(1). Sections 626.9521 and 626.9541 are found in Part X of chapter 626, known as the "Unfair Insurance Trade Practices Act," and, the Department argues, additional penalties by administrative fine are authorized by section 626.9521 without regard to the limitations in section 626.681 because this latter section is in Part I of the chapter. Since the purpose of Part X is to regulate trade practices in accordance with federal law (Pub.L. No. 15, 79th Congress), by defining and prohibiting unfair or deceptive acts or practices, and since that part authorizes the imposition of an administrative fine upon a proven violation thereof, the Department argues, it is free to impose an additional penalty for each specific unfair trade practices violation pursuant to section 626.9521. After coursing through the statutory maze of the Florida Insurance Code in an effort to verify this argument, we reject it for the following reasons.
Section 626.9521 makes it unlawful for any person to engage in an unfair trade practice as defined by the act,[5] and states that "[a]ny person who violates any provision of this part shall be subject to the penalties provided in s. 627.381." Section *1016 627.381 is included in the chapter governing "Insurance Rates and Contracts," and is found in Part I of that chapter dealing with "Rates and Rating Organizations." Section 627.381(1) states that "[t]he department may, if it finds that any person or organization has violated any provision of this part, impose an administrative fine pursuant to s. 624.4211." (Emphasis added.) Section 627.381(2) authorizes the suspension of "the license or authority of any rating organization or insurer which fails to comply with an order of the department... ." (Emphasis added.) Chapter 627 deals with the establishment of insurance rates, rating organizations, and provisions required by law to be included in insurance contracts; none of its provisions relate to disciplining insurance agents.
Section 624.4211 is found in Part III of the initial chapter of the Florida Insurance Code, entitled "Administration and General Provisions." Part III, entitled "Authorization of Insurers and General Requirements," deals with the regulation of insurers, not agents in the field. Section 624.4211(1) provides that, "[i]f the department finds that one or more grounds exist for the discretionary revocation or suspension of a certificate of authority issued under this chapter, the department may, in lieu of such revocation or suspension, impose a fine upon the insurer." (Emphasis added.) Subparagraphs (2) and (3) of that section set forth the limits of fines that can be imposed under that section and, unlike the provisions of section 626.681, authorize separate fines for each violation found not to exceed a specified aggregate.[6]
This use of multiple cross-references to other chapters that regulate other insurance activities but do not deal with licensing and disciplining of insurance agents such as Dyer is a striking example of statutory drafting at its worst. The resulting ambiguities make it exceedingly difficult if not impossible to discern true legislative intent. At oral argument, counsel for the Department of Insurance was asked to, but could not, give the court a valid explanation in justification of this multiple use of cross-references, and we note this fact, not at all in criticism of the attorney representing the Department, but only to express our concern and sympathize with him and the Department for having to attempt enforcement of such poorly drafted and confusing legislation.
Nevertheless, even after traversing from section 626.9541 to section 626.9521 to section 627.381, thence back to section 624.4211 we have found that section 624.4211 only authorizes the imposition of a fine in lieu of suspension or revocation, the same as section 626.681. Hence, section 624.4211, even if it can be said to govern the penalties for insurance agents, operates to preclude the assessment of fines when actual suspension is mandated.
More importantly, however, we conclude that the penalties in section 624.4211 are not applicable to insurance agents licensed and being disciplined under chapter 626. We agree with Dyer's argument that the exceptionally large fines authorized in section 624.4211, when considered in context with the explicit language in subparagraph (1) thereof authorizing imposition of these fines "upon an insurer" and the limits on fines to be imposed on insurance agents contained in section 626.681, leave the statutory scheme sufficiently ambiguous that a strict construction of the statutory language requires that we hold that the penalty in section 624.4211 is inapplicable to individual insurance agents like Dyer. This conclusion is further reinforced by the fact that there is no ostensible need for a reference to section 626.9521, thence to section 627.381, thence to section 624.4211, to find statutory authority for penalizing an offending insurance agent's violation of the unfair trade practices prohibited in Part X. Section 626.621(6) explicitly refers to an insurance agent's violation of Part X of chapter 626, and the applicable penalties for an insurance agent's violation thereof is *1017 the discretionary suspension or revocation provided in section 626.621 as previously discussed. Applying the principle of statutory construction that penal statutes must be strictly construed in favor of the party to be penalized, we so construe the statutes and hold that the Department had no statutory authority to impose a fine in addition to mandatory suspension for Dyer's violation of Part X of chapter 626.
One more comment regarding the imposition of penalties is necessary. Dyer contends that the Department increased the penalty over that recommended by the hearing officer but failed to set forth the specific reasons therefor, in violation of section 120.57(1)(b)10, Florida Statutes (1989). We agree that the penalty was obviously increased in two respects, making it necessary that the final order comply with that provision.
First, the final order rejected the hearing officer's recommendation not to implement the suspension and directed that Dyer's license be immediately suspended for six months. While this obviously was an increase in severity of the penalty, the Department adequately complied with the requirements of section 120.57(1)(b)10 because the increase, as explained in the final order, was necessary to correct the hearing officer's error of law; it was not based on any disagreement with the hearing officer's findings of fact. The hearing officer's recommended penalty of withholding suspension and assessing a fine in lieu of suspension was clearly contrary to the controlling statutes in light of his finding that Dyer had violated section 626.611. The Department was required to correct this error of law.
Second, even if a fine could be validly assessed in lieu of suspension for violating section 626.9541(1), as argued by the Department, the final order erred in requiring that if the fine should not be paid within 30 days, Dyer's license would stand revoked. Section 626.681(3) states that upon failure to timely pay the fine, the license "shall stand suspended or revoked ... as the case may be, upon expiration of such period." This statutory language plainly indicates that the agent's failure to timely pay an assessed fine would automatically activate the penalty of suspension or revocation, whatever was previously provided in the order, "as the case may be." This language does not contemplate that failure to pay a fine in lieu of suspension will automatically lead to the even greater penalty of revocation. Accordingly, the final order erred as a matter of law in providing that failure to timely pay the assessed fine would result in revocation rather than suspension of Dyer's license for six months.
To summarize, we affirm the findings of guilt, affirm the mandatory suspension for six months, reverse the administrative fine assessed in addition to the mandatory suspension, and remand this cause for entry of an amended order not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ERVIN, J., concurs.
WENTWORTH, Senior Judge, concurs, participating after oral argument, in substitution for NIMMONS, J.
NOTES
[1] The substantive issues in this proceeding are governed by the 1987 edition of Florida Statutes, and all statutory references will be to that edition, unless otherwise indicated.
[2] § 624.01 et seq., Fla. Stat. (1987).
[3] Section 626.611 states in part material to this case:

The department shall deny, suspend, revoke, or refuse to renew or continue the license of any agent,... and it shall suspend or revoke the eligibility to hold a license or permit of any such person, if it finds that as to the applicant, licensee, or permittee any one or more of the following applicable grounds exist:
* * * * * *
(5) Willful misrepresentation of any insurance policy or annuity contract or willful deception with regard to any such policy or contract, done either in person or by any form of dissemination of information or advertising.
(Emphasis added).
[4] Section 626.621 states in part material to this case:

The department may in its discretion, deny, suspend, revoke, or refuse to renew or continue the license of any agent, ... and it may suspend or revoke the eligibility to hold a license or permit of any such person, if it finds that as to the applicant, licensee, or permittee any one or more of the following applicable grounds exist under circumstances for which such denial, suspension, revocation, or refusal is not mandatory under s. 626.211:
* * * * * *
(3) Violation of any lawful order or rule of the department.
* * * * * *
(5) Violation of the provision against twisting, as defined in s. 626.9541(1)(1).
(6) In the conduct of business under the license or permit, engaging in unfair methods of competition or in unfair or deceptive acts or practices, as prohibited under part X of this chapter, or having otherwise shown himself to be a source of injury or loss to the public or detrimental to the public interest.
(Emphasis added).
[5] Section 626.9541 defines "unfair or deceptive acts or practices."
[6] Fines for nonwillful violations "shall not exceed $2,500 per violation" and not more than "$10,000 for all nonwillful violations arising out of the same action." Fines for "any knowing and willful violation" shall not "exceed $20,000 for each such violation" and not more than "$100,000 for all knowing and willful violations arising out of the same action."